JUDGE WOOD

10 CV 8039

Andrew L. Deutsch
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500
Attorneys for Plaintiffs

RECEIVED
OCT 22 7:10
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------- x

ROTHSCHILDS CONTINUATION HOLDINGS
AG, ROTHSCHILD NORTH AMERICA INC.,
ROTHSCHILD INC., and ROTHSCHILD
ASSET MANAGEMENT INC.,

                              Plaintiffs,

             - v. -

AARON JOSEPH ROTHSCHILD and
ROTHSCHILD ERKEN GROUP, LLC,

                    Defendants.

----------------------------------------------------------- x

10 CV _____ (   )

**COMPLAINT**

Plaintiffs Rothschilds Continuation Holdings AG, Rothschild North America Inc.,

Rothschild Inc, and Rothschild Asset Management Inc. (collectively, the **"Rothschild Entities"**

or "**plaintiffs**"), by their attorneys, DLA Piper LLP (US), for their complaint against defendants

Aaron Josepn Rothschild ("**Aaron**") and Rothschild Erken Group, LLC, ("**REG**") allege as

follows:

## INTRODUCTION

    1.    This is a civil action for false description, false advertising, and false designations

of origin in violation of 15 U.S.C. § 1125(a), and for dilution, injury to business and unfair

competition under the common and statutory law of the State of New York.  The action seeks an

injunction against (a) defendants' continued use of the mark ROTHSCHILD CLUB and Internet

domain name rothschildclub.com, (b) defendants' continued use of the mark ROTHSCHILD-

ERKEN GROUP and Internet domain names rothschild-erken.de and rothschild-erken.com (the

marks ROTHSCHILD CLUB and ROTHSCHILD-ERKEN GROUP are referred to herein as the

"**Infringing Marks**"), and (c) any commercial advertising or promotion by either defendant that

states or suggests that Aaron is descended from a noble family or a "Rothschild dynasty," or that

he or any business in which he is involved is connected with the well-known Rothschild Family

(as defined below) or businesses controlled by members of the Rothschild Family.

## PARTIES

2.      Plaintiff Rothschilds Continuation Holdings AG ("**RCH**") is a joint stock

company organized under the laws of Switzerland, located and doing business at Baarerstrasse

95, Zug 6301, Switzerland.

3.      Plaintiff Rothschild North America Inc. ("**RNA**") is a corporation organized

under the laws of Delaware, located and doing business at 1251 Avenue of the Americas, New

York, New York 10020-1104.

4.      Plaintiff Rothschild Inc. ("**RINC**") is a corporation organized under the laws of

Delaware, located and doing business at 1251 Avenue of the Americas, New York, New York

10020-1104.

5.      Plaintiff Rothschild Asset Management Inc. ("**RAM**") is a corporation organized

under the laws of New York, located and doing business at 1251 Avenue of the Americas, New

York, New York 10020-1104.

6.      Upon information and belief, Aaron is an individual residing at 341 East 65th

Street, New York, NY 10065.

7.     Upon information and belief, REG is a limited liability company created under the laws of the State of New York, and has its address for service of process at 5547 Main Street, Williamsville, New York 14221.  Upon information and belief, Aaron is a member or manager of REG.

## JURISDICTION AND VENUE

8.     The Court has subject matter jurisdiction over the claims asserted in this complaint pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1367.

9.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## FACTS COMMON TO ALL CLAIMS

### History of the Rothschild Family and the Rothschild Entities

10.     The Rothschild Entities are controlled by members of the famous Rothschild Family, who trace their common ancestry (through the male line) to Mayer Amschel Rothschild (1744-1812).  Mayer Amschel Rothschild's five sons established themselves in five separate cities, Paris, London, Vienna, Frankfurt and Naples.  The dispersed branches of the Rothschild Family proved extraordinarily successful, and the Rothschild Family grew to great prominence and wealth.  They achieved renown as one of the most important and successful banking families in the world.  Rothschild ventures have financed Wellington's armies, the Gold Rush, the acquisition of the Suez Canal, the early development of railroads in the United States and England, the search for oil, and mining of base (ore) metals such as copper and nickel.  Over two centuries, the Rothschild banking and financial businesses have adapted and evolved so that they are now involved in many aspects of financial services, including finance, privatization, securities, asset management, mergers and acquisitions, restructuring and reorganization, private placements, project finance, private equity and venture capital.

11.     In 1817 members of the Rothschild Family were granted a title by the Austrian Emperor, Francis I (who was also the last Emperor of the Holy Roman Empire under the title Francis II); they became "von Rothschild", the equivalent of which in anglophone and francophone countries is "de Rothschild."  In 1822 the same members of the Rothschild Family were made Barons of the Austrian Empire, a second hereditary title which is still in use by family members living in France and the USA.  The public is generally aware of these facts and correctly understands that many members of the Rothschild Family have the status of European nobility.

12.     Near the end of the 18th century, Nathan Mayer Rothschild, one of the sons of Mayer Amschel Rothschild, settled in England.  After his death, in 1818, NM Rothschild & Sons, a partnership, was formed to carry on the family financial business in England trading under that name.  In 1968, the business was incorporated as NM Rothschild & Sons Limited, and has traded under that name since 1970.

13.     Following the Panic of 1837 in the United States, which led to a five-year depression in the United States, an agent of the Rothschilds, August Belmont, settled in New York as the American representative of the Rothschild interests and conducted business on their behalf.

14.     The first solely United States financial business established by the Rothschild Family was Amsterdam Overseas Corporation, jointly controlled by the English and French branches of the Rothschild Family.  The business grew and was reorganized as an investment bank under the name New Court Securities Corporation in 1967.  The business continued to grow, and in 1982 was again reorganized under the name Rothschild Inc.

15.    In 1987, RNA became the holding company for the Rothschild Family's American banking/financial services operations, including Rothschild Inc. In 2003, RCH increased its ownership of RNA's voting securities to 100%.

16.    In the United States, the operating businesses owned by RNA are RINC, a Financial Industry Regulatory Authority (FINRA) registered securities broker-dealer with its principal office in New York City and a branch in Washington, D.C., and RAM, a SEC-registered investment advisor which was incorporated in 1962. RAM manages assets for institutions and high net worth individuals.

17.    As a result of the activities of the Rothschild Entities and their predecessor entities, and the well-known history of the Rothschild Family, the Rothschild name has become extremely well known in the United States and throughout the world in connection with providing investment banking and financial advisory services. The *Encyclopedia Britannica*, for example, states that ROTHSCHILD is "the name of a great European Jewish banking family." 19 *Encyclopedia Britannica* at 645 (William Benton, 1976). The Rothschild Family is often alternatively referred to as the "Rothschild dynasty," in recognition of Family members' ability to maintain prominent positions in finance, wine, art, and other fields across the generations.

18.    Numerous published works refer to the Rothschild Family, its businesses and influence. For example, in *The Rothschilds: A Family Portrait*, by Frederic Morton (New York: Atheneum, 1962), which has been dubbed an "epic bestseller," the first sentence reads, "For the last 150 years the history of the House of Rothschild has been to an amazing extent the backstage history of Western Europe." *See also* The *World's Bankers: The History of the House of Rothschild* (New York: Penguin, 1999) ("All banks have histories . . . only the Rothschilds, however, have a mythology. Most readers will recognize [the name], if only for its still fairly regular appearances in the press.")

19.    Well-known publications such as *Time* magazine frequently refer to the Rothschilds and their importance to the world of finance. In a September 29, 1980, article entitled "Family Feud," *Time* wrote: "The House of Rothschild, which once helped British Prime Minister Benjamin Disraeli buy the Suez Canal, needs no identification." Dozens of other widely distributed U.S. and international publications such as the *New York Times*, the *Wall Street Journal*, *Washington Post*, *San Francisco Chronicle*, the *International Herald Tribune*, the *Financial Times*, the *Jerusalem Post*, *Daily Mail* (London) and news services such as the Associated Press have frequently referred to the Rothschild Family and its financial businesses.

20.    For example, on March 9, 2007, the *New York Times* published on the first page of its business section a laudatory profile of Nathaniel Rothschild, a present-day member of the English branch of the Rothschild Family, who is a financier and who is next in line to become Lord Rothschild in England, which referred to the Rothschilds as "Europe's most storied banking family." On June 14, 2007, the *New York Times* published a very substantial obituary of Baron Guy de Rothschild which described his extraordinary life and the impact of the Rothschild Family on international banking.

21.    As a consequence of plaintiffs' and their predecessors' activities, an unparalleled reputation and extraordinary goodwill has attached to the Rothschild name. The Rothschild name has thereby acquired distinctiveness and secondary meaning in connection with the provision of financial services and advice and has come to be associated with the banks, investment houses, and other institutions controlled by the Rothschild Family. In the United States, this meaning, reputation, secondary meaning and goodwill has attached in particular to the financial services businesses operated by the Rothschild Entities and the marks used by them in connection with those businesses.

22. As a further consequence, statements that an individual having a leadership role in a business is a member of or offspring of the "Rothschild dynasty" will be understood by the public in the United States as representing that this person is a member of the Rothschild Family and that the business is associated with one or more of the Rothschild Entities.

**Plaintiff RCH**

23. Plaintiff RCH, a Swiss joint stock company, was established in 1982 by members of the Rothschild Family to ensure the continuation of the Rothschild Family financial services activities. It holds a 100% direct or indirect interest in the other plaintiffs. RCH owns all ROTHSCHILD-inclusive marks used by the other plaintiffs and permits them to use those marks.

**Plaintiff RNA**

24. Plaintiff RNA is the holding company for RINC, a FINRA registered securities broker-dealer and an investment bank in the United States; and RAM, a SEC-registered investment advisor. RNA owns 100% of each of these businesses. For years prior to the defendants' first use of the Infringing Marks, and continuing to the present date, RNA has adopted and used the service marks ROTHSCHILD and ROTHSCHILD NORTH AMERICA in connection with the advertising, promotion, provision and sale of the aforesaid financial services in interstate commerce in the United States.

**Plaintiff RINC**

25. RINC provides financial advisory and investment banking services, including acting as a private placement agent, acting as a dealer manager in tender and securities exchange offers, providing fairness opinions, and advising on restructuring both in the United States and together with other members of Rothschild-owned entities worldwide. It has offices in New

York and Washington, D.C.. It is a leader in global mergers and acquisitions ("**M&A**"), specializing in advising and structuring large and complex M&A transactions, as well as in restructuring companies in and out of bankruptcy.

26.    For many years prior to the defendants' first infringing use of the Infringing Marks, and continuing through the present date, RINC has adopted and used the service marks ROTHSCHILD and ROTHSCHILD INC. in connection with the advertising, promotion, provision and sale of the aforesaid financial services in interstate commerce in the United States.

27.    RINC and its subsidiaries have used these service marks extensively in the securities, investment banking and financial services industry in the United States.

**Plaintiff RAM**

28.    Plaintiff RAM is a wholly owned subsidiary of RNA, and is engaged in providing investment advisory services throughout the United States.

29.    RAM is a SEC-registered investment advisor specializing in providing investment advice on a discretionary basis to institutional accounts such as pension funds (ERISA), endowments and foundations.

30.    For years prior to the defendants' first use of the Infringing Marks, and continuing through the present date, RAM has adopted and used the service marks ROTHSCHILD and ROTHSCHILD ASSET MANAGEMENT in connection with the advertising, promotion, provision and sale of the aforesaid services in interstate commerce in the United States.

31.    Through the expenditure of substantial time, money and effort over the years by plaintiffs, through marketing and promotional activity by plaintiffs, and through extensive news coverage of the activities of plaintiffs, the mark ROTHSCHILD, standing alone or in combination with other words and symbols (including ROTHSCHILD INC., ROTHSCHILD NORTH AMERICA, and ROTHSCHILD ASSET MANAGEMENT), has acquired substantial

distinctiveness, goodwill and secondary meaning, and, when used in connection with financial

services within the United States, has come to be associated with financial services having their

origin or sponsorship exclusively with the Rothschild Entities.

**Defendants' Infringing Activity: The "Rothschild Club"**

32.     Upon information and belief, Aaron is the organizer of an entity called "The

Rothschild Club," controls an internet domain name "rothschildclub.com," and maintains and

promotes a website with the URL www.rothschildclub.com (the "**Club Website**").

33.     The Club Website indicates that the "Rothschild Club" caters to a market of

businessmen and entrepreneurs in the United States and elsewhere. This market of potential and

actual clients of the "Rothschild Club" is familiar with the reputation of the Rothschild Family

and Rothschild Entities, and is likely to be misled into believing that the "Rothschild Club" is

asociated with or authorized by plaintiffs and the Rothschild Family.

34.     This false association with plaintiffs is deliberately reinforced by the section of

the Club Website labeled "Club History." This section refers to the involvement of the

"Rothschild family" in the support of the European powers during the Napoleonic wars. The

actual Rothschild Family was well-known for supporting and financing the governments that

opposed Napoleon, including England, Prussia, and Austria. The "Club History" section also

contains a purported "Royal Seal," and asserts that "Michael Levi" supported the war efforts of

the Holy Roman Empire and was made "keeper of the Royal Seal by the Emperor's decree." It

also asserts that "the Royal Seal grants all the powers and rights of the Royal Court of the

Empire to him and his entire family." While this history is largely fictitious, it trades on the

public's general knowledge that the Rothschild Family was ennobled by the last Holy Roman

Emperor. It is unquestionably calculated to deceive potential and actual consumers of the

services of the "Rothschild Club" into believing that the "Club" is associated with or sponsored by the Rothschild Family and Rothschild Entities.

**Defendants' Infringing Activity: The Rothschild-Erken Group**

35.     Upon information and belief, REG owns and operates an internet website at the URLs www.regroup-usa.com and www.rothschild-erken.com. According to this website, REG "works to identify foreign-based companies with strong growth potential and pair them with United States based investors and production partners." It states that it "help[s] entrepreneurs build, scale, and prepare their businesses for introduction to investors."

36.     Upon information and belief, REG is particularly oriented towards providing services to German companies that wish to do business in the United States. Upon information REG also maintains a German-language version of its website at www.rothschild-erken.de (the "**REG Website**"). This site, which can be accessed by any Internet user in the United States, displays an article reproduced from a German newspaper that, upon information and belief, describes Aaron as an "offspring of the Rothschild dynasty." Upon information and belief, the REG Website has described Aaron as descended from the "reputable, worldwide-known Konstanz dynasty [of] Moses Rothschild."

37.     The REG website (in both English and German) is thus directed to an audience of businessmen and entrepreneurs that is very familiar with the Rothschild Family and the businesses operated by plaintiffs. The German-language version of this website is likely to be read by American businessmen and entrepreneurs who wish to do business in Germany and are bilingual, and by German businessmen and entrepreneurs who wish to do business in the United States or attract American partners for joint venture activities. From the statements set forth above, this audience is likely to be mislead into believing that Aaron is a member of the

Rothschild Family and that the services and business of REG are approved and/or sponsored or offered by one or more of the Rothschild Entities.

## FIRST CLAIM FOR RELIEF

### (Lanham Act Violation – False Designation and Representations/Commercial Advertising and Promotion)

38.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 37 of this complaint as though fully set forth herein.

39.     Defendants' infringing activities, as set forth above, constitutes the use of false designations of origin or false or misleading descriptions and representations of fact, which is likely to cause confusion or mistake, or to deceive consumers, as to the affiliation, connection or association of Aaron and REG with plaintiffs, or as to the origin, sponsorship, or approval by plaintiffs of the services and commercial activities offered and sold by Aaron and /or REG, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

40.     Defendants' infringing activities, as set forth above, have been made in commercial advertising or promotion and misrepresent the nature and characteristics of defendants' goods and services, in violation of 15 U.S.C.§ 1125(a).

41.     Upon information and belief, defendants have undertaken their infringing activities with the willful intent of deceiving and misleading the public into falsely believing that Aaron is a member of the Rothschild Family and that the "Rothschild Club" and REG is associated with the Rothschild Entities and therefore is deserving of trust and the public's business.

42.     As a result of defendants' wrongful and willful acts, as set forth above, the Rothschild Entities have suffered and will continue to suffer irreparable injury which is not capable of monetary determination.

43.     Plaintiffs have no adequate remedy at law.

### SECOND CLAIM FOR RELIEF

#### (Common-Law Unfair Competition And Trademark Infringement)

44.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 43 of this complaint as though fully set forth herein.

45.     The wrongful acts of the defendants, as set forth above, constitute unfair competition and common-law trademark infringement under the common law of the State of New York.

46.     As a result of the defendants' wrongful acts, as set forth above, the Rothschild Entities have suffered and will continue to suffer irreparable injury which is not capable of monetary determination.

47.     Plaintiffs have no adequate remedy at law.

### THIRD CLAIM FOR RELIEF

#### (Injury To Business Reputation And Dilution – § 360(*l*), New York General Business Law)

48.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 through 47 this complaint as though fully set forth herein.

49.     As a result of the Rothschild Entities' extensive and continuous use of their marks as described herein, and the strong nature of those marks, those marks have become distinctive.

50.     The above-described wrongful use by the defendants of the marks "Rothschild-Erken Group" and "Rothschild Club" (the **"Infringing Marks"**) was and is done willfully and with the intention to trade on plaintiffs' reputation and/or to cause dilution of plaintiffs' marks.

51.    As a result of the facts set forth above, the defendants' wrongful use of the Infringing Marks, unless enjoined by this Court, is likely to cause both dilution by tarnishment and dilution by blurring of plaintiffs' marks, to plaintiffs' irreparable injury.

52.    The defendants' wrongful use of the Infringing Marks have caused a likelihood of injury to the Rothschild Entities' business reputation and have the likely effect of diluting the distinctive quality of plaintiffs' own marks, entitling plaintiffs to injunctive relief against such acts pursuant to Section 360(*l*) of the New York General Business Law.

53.    As a result of the defendants' wrongful acts, as set forth above, the Rothschild Parties have suffered and will continue to suffer irreparable injury which is not capable of monetary determination.

54.    Plaintiffs have no adequate remedy at law.

WHEREFORE, plaintiffs demand judgment:

I.    Ordering:

a.    that the defendants, their officers, directors, agents, servants, employees, representatives and affiliates and all persons, firms, corporations and other entities in active concert or participation with them, or any of them, be preliminarily and permanently enjoined and restrained from:

(i)    using directly or indirectly, in any manner whatsoever, the marks "Rothschild Club", "Rothschild-Erken Group," or any other mark or domain name that includes the name or word "Rothschild" or any mark similar in nature thereto;

(ii)    representing that Aaron is a member of the Rothschild Family or a "Rothschild dynasty," or is a descendant of an ennobled family or is himself ennobled;

(iii) doing any other act or thing calculated or likely to cause confusion or mistake in the trade or the minds of the public, or to deceive actual or potential purchasers into

- 13 -

believing that the defendants' services originate with any of the plaintiffs or are approved, licensed, or otherwise authorized by any of the plaintiffs;

    (iv)  engaging in any other activity that constitutes unfair competition with respect to plaintiffs; and

    (v)  aiding, abetting or assisting any other person or entity in engaging in or performing any activities stated in paragraphs (i) through (iv).

    b.  That the defendants, within five (5) days after entry of judgment, deliver up to counsel for plaintiffs for destruction, all documents, including, without limitation, promotional and advertising materials, catalogs, displays, labels, packaging, letterheads and printed materials, and containers bearing, displaying, or incorporating the Infringing Marks, or any other mark which includes the name or word "Rothschild" or any mark similar in nature thereto.

    c.  That the defendants assign over to plaintiffs all right, title, and interest in and to the registration of the domain names www.rothschildclub.com, www.rothschild-erken.de and www.rothschild-erken.com and of any other domain name that includes the name "Rothschild."

    d.  That each defendant be directed to file with this Court and to serve upon plaintiffs within thirty (30) days of the service of this Court's injunction, a written report signed by said defendant, under oath, setting forth in detail the manner in which said defendant complied with the injunction.

    e.  That the defendants be required to account to plaintiffs for any and all profits derived by them from their acts of trademark infringement, dilution, and unfair competition and that plaintiffs have and recover three times their damages sustained as the result of their wrongful acts, together with interest as allowed by law.

   f.  That plaintiffs be awarded the costs and disbursements of this action,

including reasonable attorney fees.

   g.  That such other and further relief be granted as the Court may deem just

and proper.

Dated: New York, New York
    October 20, 2010

         Respectfully submitted,

         DLA PIPER LLP (US)

         By: _____
           Andrew L. Deutsch
         1251 Avenue of the Americas
         New York, New York 10020
         Telephone: (212) 335-4500
         Telecopier: (212) 335-4501

          Attorneys for Plaintiffs
          ROTHSCHILDS CONTINUATION
          HOLDINGS AG, ROTHSCHILD NORTH
          AMERICA INC., ROTHSCHILD INC., and
          ROTHSCHILD ASSET MANAGEMENT INC.